881 F.2d 1
 26 Soc.Sec.Rep.Ser. 489, Medicare&Medicaid Gu 37,986
Vincent ANDERSON, Irene Cirillo, Michael de Monte, Alexander
Ellman, Kenneth Sunew and Eduard Negoianu,
Plaintiffs-Appellants,
v.
Otis R. BOWEN, as Secretary of the Department of Health and
Human Services, William Toby, Morton Berkowitz,
Mordecai A. Berkun, and Empire Blue
Cross Blue Shield, Defendants.
 No. 946, Docket 88-6299.
 United States Court of Appeals,
Second Circuit.
 Argued March 31, 1989.
Decided July 28, 1989.
 
 Whitney North Seymour, Jr., Craig A. Landy, New York City (Brown & Seymour, New York City, of counsel), for plaintiffs-appellants.
 Benito Romano, U.S. Atty., S.D.N.Y. (Gabriel W. Gorenstein, Asst. U.S. Atty., New York City, Richard M. Schwartz, Asst. U.S. Atty., New York City, of counsel), for Appellees.
 Before FEINBERG, PIERCE and BROWN*, Circuit Judges.
 JOHN R. BROWN, Senior Circuit Judge.
 
 
 1
 Patients enrolled in the voluntary Medicare Part B health insurance program and physician assignees of enrolled patients appeal the district court's F.R.Civ.P. 12(b)(1) dismissal for lack of subject matter jurisdiction. Finding a challenge to the amount of Medicare Part B benefits awarded at the heart of this controversy, we agree with the district court that it has no jurisdiction under 28 U.S.C. Sec. 1331 to review the Part B benefit determination. The patients and physicians also fail to establish jurisdiction by either presenting a substantial constitutional equal protection claim, or showing existence of a clear nondiscretionary duty to support mandamus jurisdiction under 28 U.S.C. Sec. 1361.
 
 Part B Roadmap
 
 2
 Part B of the Medicare Act, 42 U.S.C. Secs. 1395j-1395w-3, is a federally subsidized voluntary health insurance program for persons who are aged 65 or older, or are disabled. Part B insures against a portion of some medical expenses, such as various physician services, out-patient physical therapy, x-rays, laboratory testing and similar ancillary medical services. 42 U.S.C. Sec. 1395l; 42 C.F.R. Sec. 405.231. Eligible individuals enroll in the program and pay monthly premiums. See 42 U.S.C. Sec. 1395r. The Secretary of Health & Human Services (Secretary) is authorized by Congress to contract with private health insurance carriers to administer the Part B claims process. 42 U.S.C. Sec. 1395u(a). See generally Schweiker v. McClure, 456 U.S. 188, 190-91, 102 S.Ct. 1665, 1667-68, 72 L.Ed.2d 1, 4-5 (1982).
 
 
 3
 The Secretary, through the Health Care Financing Administration (HCFA), contracted with Empire Blue Cross and Blue Shield (EBCBS)[1] to administer Medicare Part B benefits in many New York counties. In its role as a Part B carrier, EBCBS reviews and pays Part B claims according to procedures established by the Medicare Act. This requires that EBCBS utilize statutory guidelines and regulations to determine whether the charges for services rendered are "reasonable." See 42 U.S.C. Sec. 1395u(b)(3), 42 C.F.R. Secs. 405.501 et seq. While the statute and regulations instruct the carrier to take into account certain criteria in ascertaining the reasonableness of a charge for which a claim reimbursement is sought, additional factors found by the carrier to be necessary to judge the inherent reasonableness of a charge may also be considered. 42 C.F.R. Sec. 405.502(a)(7).
 
 Heart of the Matter
 
 4
 The instant case involves a dispute regarding EBCBS reimbursements from July 1982 to July 1986 for Swan-Ganz heart catheterizations. Patients enrolled in the Part B program and assignee physicians (claimants)[2] who submitted claims for Swan-Ganz procedures performed during this time period challenge reductions to EBCBS reimbursements. Prior to July 1982, all right heart catheterizations (RHCs), including Swan-Ganz,[3] were reimbursed under one RHC code. However, EBCBS established a new code for the Swan-Ganz procedure. On July 29, 1982 EBCBS Director Berkun instructed his staff not to treat the Swan-Ganz procedure as a RHC for purposes of reimbursement. This change resulted in reimbursement for Swan-Ganz procedures at a rate lower than those heart catheterizations reimbursed under the generic RHC code.
 
 
 5
 The claimants sought and received carrier review of claim determinations by EBCBS involving reimbursement under the new code for the Swan-Ganz procedure.[4] Hearing officer (HO) Woodson handled review of these claims and in decisions rendered between July 23 and 25, 1985 upheld the carrier's decision, set forth in the Berkun directive, to apply the new code--not the RHC code--and corresponding reimbursement rate for the Swan-Ganz procedures. The claimants, unhappy with Woodson's decision, seek judicial review of these claims. The district court, however, dismissed their complaint for lack of subject matter jurisdiction.
 
 
 6
 Federal Question Jurisdiction?
 
 
 7
 The claimants argue that 42 U.S.C. Sec. 1395ff, as in effect at the time of the instant claims,[5] does not preclude judicial review of their Part B claims. Section 1395ff states:
 
 
 8
 (a) Entitlement to and amount of benefits
 
 
 9
 The determination of whether an individual is entitled to benefits under part A or part B of this subchapter, and the determination of the amount of benefits under part A of this subchapter, shall be made by the Secretary in accordance with regulations prescribed by him.
 
 
 10
 (b) Appeal by individuals
 
 
 11
 (1) Any individual dissatisfied with any determination under subsection (a) of this section as to--
 
 
 12
 (A) whether he meets the conditions of section 426 or section 426a of this title, or
 
 
 13
 (B) whether he is eligible to enroll and has enrolled pursuant to the provisions of part B of this subchapter, or section 1395i-2 of this title, or section 1819, or
 
 
 14
 (C) the amount of benefits under part A of this subchapter (including a determination where such amount is determined to be zero)
 
 
 15
 shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.
 
 
 16
 (2) Notwithstanding the provisions of subparagraph (C) of paragraph (1) of this subsection, a hearing shall not be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $100; nor shall judicial review be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $1,000.
 
 
 17
 Claimants characterize their complaint as a challenge "not [to] the determination of specific benefit amounts, but the validity of the instructions issued by HCFA on behalf of the Secretary to the carrier's Hearing Officers." Appellant's Brief at 15. This characterization artfully tracks the mandate of Bowen v. Michigan Academy of Family Physicians that "those matters which Congress did not leave to be determined in a 'fair hearing' conducted by the carrier--including challenges to the validity of the Secretary's instructions and regulations--are not impliedly insulated from judicial review by 42 U.S.C. Sec. 1395ff (1982 ed. and Supp. II)." 476 U.S. 667, 678, 106 S.Ct. 2133, 2137, 90 L.Ed.2d 623, 633 (1986). See also Kuritzky v. Blue Shield of Western New York, 850 F.2d 126, 128 (2d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 787, 102 L.Ed.2d 778 (1989) (permitting judicial review of "the method set forth in the Secretary's regulatory scheme that prescribes how the carriers are to calculate benefits").
 
 
 18
 The claimants contend that HCFA's letter of November 24, 1984 constitutes a judicially reviewable instruction under Michigan Academy. That letter stated "[b]ased on our review, we concur with BCBSGNY's[6] reimbursement policies [namely setting up a separate reimbursement code] for Swan-Ganz catheterizations and pump oxygenators." That policy was first enunciated in Director Berkun's July 1982 directive. According to the claimants, HO Woodson was bound by this November 1984 "instruction" and thus he could not effectively review the disputed claims since under 42 C.F.R. Sec. 405.860 HOs must uphold instructions issued by HCFA.
 
 
 19
 The claimants' position, however, fails to recognize the effect of a subsequent letter HCFA sent to EBCBS on May 22, 1985. That letter stated:
 
 
 20
 The purpose of this letter is to clarify that HCFA's November 27, 1984 letter to you regarding the Swan-Ganz catheter and pump oxygenators was in the nature of an informal HCFA statement and is not one of the items enumerated in 42 CFR 405.860 which are binding on a carrier's Hearing Officer. Thus, while the Hearing Officer may consider the letter in making a decision, it is not binding on him/her.
 
 
 21
 Even if we accept the claimants' position that the November 1984 HCFA letter constitutes a binding instruction, we could not, after the May 1985 letter, hold that it had such binding effect. There can be no doubt that in its May 1985 correspondence HCFA made it clear that the November 1984 letter was not to be interpreted as an instruction which was binding on HOs. While HCFA may very well have issued the May 1985 letter to sidestep judicial review of the Swan-Ganz claims, neither we nor the parties harbor any doubts that an agency, such as HCFA, empowered to issue binding instructions also has the derivative power to rescind such instructions. Certainly there is no statutory or constitutional basis for thinking otherwise.
 
 
 22
 The claimants argue that notwithstanding the May 1985 HCFA letter, HO Woodson acted as if he were bound by the Berkun directive. This position relies on an "actions speak louder than words" theory. They attribute Woodson's changed view[7] with respect to the propriety of reimbursement for the Swan-Ganz procedure to his treating the November 1984 HCFA letter as a binding instruction. The claimants erroneously fail, however, to recognize that in his written findings and decision Woodson quoted the May 1985 HCFA letter rescinding its instruction and concluded "the Hearing Officer must still make his own decision on the subject, giving due and respectful consideration to the Regional Office statement." In Woodson's subsequent explanation of his departure from his earlier view that the Swan-Ganz procedure claims were improperly reimbursed, Woodson makes it clear that he is not acting as if he were bound by the November 1984 HCFA letter.
 
 
 23
 The district court has no jurisdiction under Michigan Academy or its progeny[8] to review an HO ruling of an amount determination, and also in so doing probe the motivations of an HO ruling when he has specifically stated his grounds of decision in his findings and decision. This is certainly true when the so-called instruction which the dissatisfied claimant asserts as the ground for federal jurisdiction (i) has been clearly rescinded by HCFA, and (ii) the HO has made it crystal clear that he did not act under the mistaken belief that he was bound by that one-time instruction.
 
 
 24
 A Collateral Constitutional Challenge: Stepping Stone to
 
 
 25
 Federal Court?
 
 
 26
 The claimants alternatively argue that the equal protection component of their complaint confers federal jurisdiction. Even accepting arguendo that there are instances when federal courts have jurisdiction over constitutional challenges to Medicare Part B amount determinations,[9] we agree with the district court that the claimants' equal protection claim is of insufficient substance to confer jurisdiction.
 
 
 27
 In the instant case, claimants state that their equal protection claim "is that HCFA has unlawfully colluded with EBCBS on reimbursement for Swan-Ganz procedures where Part B claimants in other areas are not victims of a similar conspiracy." Appellant's Brief at 25 n. 7. We disagree with claimants' argument that the district court failed to comprehend the essence of their constitutional claim. Instead, the district court properly concluded that in essence the so-called equal protection claim was merely the original challenge to a Part B amount determination recloaked in constitutional garb. These constitutional twists are without a doubt of insufficient substance[10] to confer federal jurisdiction.
 
 
 28
 The Last Stand: Mandamus Jurisdiction?
 
 
 29
 Accepting arguendo that mandamus jurisdiction theoretically can be invoked to permit judicial review of Part B determination despite the preclusive language of 42 U.S.C. Sec. 405(h)[11], we agree with the district court that exercise of mandamus jurisdiction would be inappropriate.
 
 
 30
 The prerequisites for issuance of a writ of mandamus are peremptory: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." Lovallo v. Froehlke, 468 F.2d 340, 343 (2d Cir.1972) (citing United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 543-44, 57 S.Ct. 855, 857, 81 L.Ed. 1272 (1937); 28 U.S.C. Sec. 1361), cert. denied, 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973).
 
 
 31
 Though the claimants are correct that the district court opinion erroneously quoted the text of 42 C.F.R. 405.502(a)(7) which was in effect after the events of the instant case had occurred, the relevant language of the regulation then in effect still allows considerable HCFA and carrier discretion in determining whether a charge is "inherently reasonable." This discretion makes mandamus inappropriate since the challenge does not involve a plainly defined and peremptory or a "clear nondiscretionary duty"[12] on the part of HCFA or EBCBS. See Heckler v. Ringer, 466 U.S. at 617, 104 S.Ct. at 2022, 80 L.Ed.2d at 637. Claimants' other contentions that the district court abused its discretion in not exercising mandamus jurisdiction are meritless.
 
 
 32
 In summary, we affirm the district court's dismissal of the complaint for lack of subject matter jurisdiction.
 
 
 33
 AFFIRMED.
 
 
 
 *
 Hon. John R. Brown, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 [1]
 Formerly Blue Cross and Blue Shield of Greater New York
 
 
 [2]
 For ease of reference we refer to the plaintiff/appellant patient enrollees and assignee physicians as the claimants
 
 
 [3]
 Swan-Ganz is one method of right heart catheterization
 
 
 [4]
 Dissatisfied claimants are entitled to review of their claims and carrier reimbursements by a carrier "fair hearing" procedure if the amount in controversy is $100 or more. 42 U.S.C. Sec. 1395u(b)(3)(C); 42 C.F.R. Sec. 405.801 & .820. Hearing officers (HOs) handle this review process, 42 C.F.R. Sec. 405.823, but their review is circumscribed by the Medicare Act and regulations as well as "policy statements, instructions and other guides" issued by HCFA. 42 C.F.R. Sec. 405.860. The HO's decision is "final and binding upon all parties to the hearing." 42 C.F.R. Sec. 405.835
 
 
 [5]
 In 1986, Sec. 1395ff was amended by Congress to permit limited judicial review of Part B payment determinations for Part B services provided after January 1, 1987. Budget Reconciliation Act of 1986, Pub.L. No. 99-509, Sec. 9341(a)(1)(B), 1986 U.S.Code Cong. & Admin.News (100 Stat.) 1874, 2037. Since the Swan-Ganz procedures were all provided prior to 1987, the 1986 amendment is inapplicable to the instant case. As applied to these claimants, Part B eligibility and enrollment disputes but not amounts of Part B benefit determinations are subject to judicial review under the pre-1987 text of Sec. 1395ff. 42 U.S.C.A. Sec. 1395ff (1983)
 
 
 [6]
 EBCBS was formerly BCBSGNY
 
 
 [7]
 Woodson initially viewed the Berkun directive creating a code for Swan-Ganz catheterizations separate and distinct from RHCs as incorrect
 
 
 [8]
 Texas Medical Ass'n v. Sullivan, 875 F.2d 1160, 1160 (5th Cir.1989) [at 4440]; Ass'n of Seat Lift Manufacturers v. Bowen, 858 F.2d 308 (6th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989); Kuritzky v. Blue Shield of Western New York, Inc., 850 F.2d 126 (2d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 787, 102 L.Ed.2d 778 (1989); McCuin v. Secretary of Health & Human Services, 817 F.2d 161 (1st Cir.1987); Medical Fund-Philadelphia Geriatric Center v. Heckler, 804 F.2d 33 (3d Cir.1986); Linoz v. Heckler, 800 F.2d 871 (9th Cir.1986)
 
 
 [9]
 See Michigan Academy, 476 U.S. 667, 681 n. 12, 106 S.Ct. 2133, 2141 n. 12, 90 L.Ed.2d 623, 635 n. 12
 
 
 [10]
 Federal courts are relieved of their duty to exercise jurisdiction over constitutional questions when the claim asserted is deemed " 'so attenuated and unsubstantial as to be absolutely devoid of merit', ... 'obviously frivolous', 'plainly unsubstantial', or 'no longer open to discussion.' " Hagans v. Lavine, 415 U.S. 528, 536-37, 94 S.Ct. 1372, 1378-79, 39 L.Ed.2d 577, 587 (1974) (citations omitted)
 
 
 [11]
 Section 405(h) provides:
 The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or government agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.
 The Supreme Court has reserved this question and so do we. See Heckler v. Ringer, 466 U.S. 602, 616, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622, 636-37 (1984).
 
 
 [12]
 See id. (citing Kerr v. United States District Court, 426 U.S. 394, 402-03, 96 S.Ct. 2119, 2123-24, 48 L.Ed.2d 725, 732-33 (1976))