**ABBOTT RADIOLOGY ASSOCIATES, et al., Plaintiffs,**

v.

**Louis SULLIVAN, as Secretary of the Department of Health and Human Services, and the Department of Health and Human Services, Defendants.**

No. 89–CV–1356S.

United States District Court, W.D. New York.

July 24, 1992.

Robert J. Lane, Jr., Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N.Y., for plaintiffs.

Dennis C. Vacco, U.S. Atty. by Stephen J. Baczynski, Asst. U.S. Atty., Buffalo, N.Y., Joel Tornari, Dept. of Health and Human Services, Baltimore, Md., for defendants.

## DECISION AND ORDER

SKRETNY, District Judge.

Plaintiffs are twenty-eight physicians or groups of physicians specializing in radiology and providing "radiologist services" within the meaning of 42 U.S.C. § 1395m(b)(6). (Am.Complaint, ¶ 1). They commenced this action to challenge the amounts they were receiving or were permitted to charge their patients under the Medicare statute for radiologist services. These amounts were set by a fees schedule developed pursuant to a regulation promulgated by the Secretary of Health and Human Services (the "Secretary"). Plaintiffs attacked the regulation as inconsistent with the authorizing statute.

Defendants have moved to dismiss the amended complaint pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6). Further, plaintiffs have moved for an order staying the proceedings pending certain discovery.

For the reasons articulated below, defendants' motion pursuant to Fed.R.Civ.P. 12(b)(1) is denied in part and granted in part and defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6) is granted. Plaintiffs motion for a stay is denied.

## FACTS

Plaintiffs bring this action against Louis Sullivan in his capacity as Secretary of the Department of Health and Human Services (the "Secretary") and against the Department of Health and Human Services (the "Department").

The Medicare statute, 42 U.S.C. § 1395 *et seq.*, consists of two parts. Part A, 42 U.S.C. §§ 1395c–1395i, provides for reimbursement for hospitalization expenses, and is not at issue here. Part B, 42 U.S.C. §§ 1395j–1395w, which is at issue here, provides reimbursement for non-hospital medical services, such as the radiologist services provided by plaintiffs herein. (defendants' memo, at p. 3; plaintiffs' memo, at p. 1).

Pursuant to 42 U.S.C. § 1395m(b), the Secretary is required to develop fee schedules pursuant to which payments for radiologist services are calculated. In doing so, the Secretary must consult with various organizations (42 U.S.C. § 1395m(b)(2)) and must consider certain factors (42 U.S.C. § 1395m(b)(3)). The entire subsection (b) was added to § 1395m by the Omnibus Budget Reconciliation Act of 1987 ("OBRA '87"), and was made applicable to radiologist services performed on or after April 1, 1989. All the radiologist services for which payment is at issue in this lawsuit were performed after this date.

To facilitate the administration of Part B, 42 U.S.C. § 1395u(a) authorizes the Secretary to enter into contracts with private health insurance carriers ("carriers"). Under such contracts, the carriers may perform various functions which are required of the Secretary, including developing fee schedules. In this case, the Secretary contracted with Blue Shield of Western New York, Inc. ("Blue Shield") to administer the Part B program in all of New York State, except for the greater New York City metropolitan area. (Am.Complaint, ¶ 20). Blue Shield developed fee schedules in accordance with 42 C.F.R. § 405.531, the regulation promulgated by the Secretary authorizing carriers to establish such schedules. (Am.Complaint, ¶ 22).

Plaintiffs'[1] amended complaint alleges that 42 C.F.R. § 405.531 directly conflicts with the original authorizing statute, 42 U.S.C. § 1395m(b). (Am.Complaint, ¶ 31). The statute as it read in March 1989, when the Secretary promulgated 42 C.F.R. § 405.531, required the Secretary to develop fee schedules for radiologist services "on a regional, statewide or carrier service area basis."[2] (Am.Complaint, ¶ 10). 42 C.F.R. § 405.531, however, purported to direct carriers to establish "a radiology fee schedule for each *locality* in its service area based on a national relative value scale and any appropriate local relative value scale multiplied by locality-specific conversion factors ..." (emphasis added), effective for all radiologist services rendered after April 1, 1989. (Am.Complaint, ¶ 18). Consistent with the regulation, Blue Shield established separate fee schedules for radiology services performed in each of the four *localities* contained within its service area. (Am.Complaint, ¶ 22). Plaintiffs rendered services in "Locality 1," the fee schedule which provides for the lowest rates of the four localities. (Am.Complaint, ¶¶ 23–24). Plaintiffs allege that had the Secretary promulgated a regulation consonant with the statute, Blue Shield would have been obliged to set a fee schedule based on a regional, statewide or carrier service area basis. As a result, participating plaintiffs would have been paid more by Medicare for their services, and non-participating plaintiffs would have been permitted to charge more for their services. (Am.Complaint, ¶¶ 25–28).

The Amended Complaint alleges five causes of action. The First Cause of Action requests that this Court, pursuant to 5 U.S.C. § 706, set aside 42 C.F.R. § 405.531 and compel the Secretary to promulgate a rule requiring that payments to plaintiffs for radiology services be made in accordance with a fee schedule developed on a regional, statewide or carrier service area basis. (Am.Complaint, ¶ 32). The Second and Third Causes of Action seek the same relief pursuant to 28 U.S.C. § 1361 and 42 U.S.C. §§ 1395b and 405(a), respectively. (Am.Complaint, ¶¶ 35, 40). The Fourth Cause of Action seeks review, pursuant to 42 U.S.C. §§ 405(g) and 1395ff, of the Secretary's determinations of the amounts paid to participating plaintiffs after April 1, 1989, and an order requiring the Secretary to redetermine the amount of these payments in accordance with a proper fee schedule. (Am.Complaint, ¶ 44). The Amended Complaint specifically alleges as to the Fourth Cause of Action that exhaustion of administrative remedies would be futile because "... the Secretary would be bound by his own regulation ... and would be without power to grant plaintiffs the relief they are seeking." (Am.Complaint, ¶ 46). Finally, the Fifth Cause of Action seeks a declaratory judgment pursuant to 28 U.S.C. § 2201, declaring that 42 C.F.R. § 405.531 is invalid because it is in conflict with 42 U.S.C. § 1395m(b), and that 42 U.S.C. § 1395m(b) requires that payment for radiology services rendered after April 1, 1989, be calculated on a regional, statewide or carrier service area basis. (Am.Complaint, ¶ 48).

Defendants moved to dismiss the Amended Complaint for lack of subject matter jurisdiction, arguing that plaintiffs failed to exhaust the administrative remedies set forth in 42 U.S.C. § 405(b), which are applicable to the Medicare Act pursuant to 42 U.S.C. § 1395ff(b). In response, plaintiffs did not dispute that they have not exhausted or attempted to exhaust these administrative remedies. Rather, they claimed that no exhaustion requirement exists for

---

1. Most of the plaintiffs in this case are "participating physicians" (hereinafter, the "participating plaintiffs"). Under 42 U.S.C. § 1395u(h)(1), participating physicians agree to accept payment for their services by taking assignment of their patients' claims against Medicare. (Am.Complaint, ¶ 5). The remainder of the plaintiffs in this case are "non-participating physicians" (hereinafter, "non-participating plaintiffs"). Non-participating physicians accept pay-ment for their services directly from their patients, but the amounts they may charge for such services are limited by the formulas set forth in 42 U.S.C. § 1395m(b)(5). (Am.Complaint, ¶¶ 6–7).

2. As I shall discuss, *infra*, the statute was amended by the Omnibus Budget Reconciliation Act of 1990.

their First, Second, Third and Fifth Causes of Action, and as to their Fourth Cause of Action, they alleged in the Amended Complaint that exhaustion would have been futile.

On November 6, 1990, after defendants had filed their original motion to dismiss, Congress passed the Omnibus Budget Reconciliation Act of 1990 ("OBRA '90"). Section 4102(f) of OBRA '90 amended 42 U.S.C. § 1395m(b) to authorize the Secretary to develop a fee schedule for radiology services "on a regional, statewide, *locality* or carrier service area basis." (emphasis added). Moreover, Congress made this amendment effective "as if it were included in the enactment of [OBRA '87]." Thus, by adding "locality" to the statutorily authorized bases for developing radiology fee schedules, Congress removed the alleged discrepancy between 42 C.F.R. § 405.531 and 42 U.S.C. § 1395m(b)(1)(B), and made the change retroactive to cover any fee schedules established since the effective date of OBRA '87 (April 1, 1989), which encompasses all payments for radiologist services at issue in this lawsuit. Accordingly, defendants amended their motion to dismiss to allege, pursuant to Fed.R.Civ.P. 12(b)(6), that plaintiffs had failed to state a claim upon which relief could be granted.

In response to defendants' amended motion, plaintiffs argue that before the passage of OBRA '90, they possessed statutory and contractual property rights to receive payment for the radiology services they had rendered pursuant to a fee schedule calculated "on a regional, statewide or carrier service area basis." Therefore, plaintiffs argue that the retroactive application of OBRA '90 to include "locality" as an additional basis for the development of fee schedules deprives them of their property without due process of law and constitutes a "taking" without just compensation, both in violation of the Fifth Amendment.

## DISCUSSION

### I. *Subject Matter Jurisdiction*

42 U.S.C. § 1395ff(b)(1) provides in relevant part:

> Any individual dissatisfied with a determination under subsection (a) of this section as to ... (C) the amount of benefits under part A or part B of this subchapter ... shall be entitled to a hearing thereon by the Secretary to the same extent as provided in section 405(b) of this title and to judicial review of the final decision after such hearing as is provided in section 405(g) of this title.

Defendants argue that because plaintiffs have failed to exhaust this administrative procedure, this Court lacks subject matter jurisdiction. Defendants further argue that plaintiffs cannot avoid exhaustion by premising jurisdiction on a statute other than the Medicare Act, insofar as 42 U.S.C. § 405(h) provides that "[n]o action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter[,]" and "... § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue of relief for all 'claim[s] arising under' the Medicare Act." *Heckler v. Ringer*, 466 U.S. 602, 615, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984). Therefore, defendants argue that plaintiffs' claims must be dismissed for lack of subject matter jurisdiction.

Plaintiffs advance various arguments in response to defendants' Rule 12(b)(1) motion. First, plaintiffs argue that the administrative exhaustion requirement does not apply to all cases arising under the Medicare statute. Rather, under *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), the requirement applies only to challenges to the determination of the amount of benefits payable under the statute. (Plaintiffs' memo, at 10). In contrast, plaintiffs characterize this case as a challenge to the facial validity of the Secretary's regulations. Therefore, plaintiffs argue that their First, Third and Fifth Causes of Action implicate federal question jurisdiction, 28 U.S.C. § 1331, which carries with it no exhaustion requirement.

Plaintiffs' argument has substantial judicial support. In *Michigan Academy, su-*

*pra,* an association of family physicians and several individual doctors challenged the validity of a regulation promulgated under Part B of the Medicare program which authorized payment of benefits in different amounts for similar physicians' services. *Id.,* 476 U.S. at 668, 106 S.Ct. at 2135. The Secretary argued that the Court lacked jurisdiction because "the Medicare statute forbids judicial review of all questions affecting the amount of benefits payable under Part B...." *Id.* The Court, citing *United States v. Erika, Inc.,* 456 U.S. 201, 208, 102 S.Ct. 1650, 1654, 72 L.Ed.2d 12 (1982), agreed that the language and legislative history of the Medicare statute indicated that Congress deliberately intended to foreclose review of the determinations of the amount of Part B awards beyond the "fair hearing by the carrier" provided in 42 U.S.C. § 1395u(b)(3)(C).[3] However, the Court found that the statute "... simply does not speak to challenges mounted against the *method* by which such amounts are to be determined rather than the *determinations* themselves." *Michigan Academy,* 476 U.S. at 675, 106 S.Ct. at 2138 (emphasis in original). Accordingly, the Court found that "... it is implausible to think [Congress] intended that there be *no* forum to adjudicate statutory and constitutional challenges to regulations promulgated by the Secretary," *Id.,* 476 U.S. at 678, 106 S.Ct. at 2140 (emphasis in original), and ruled that respondents' challenge to the validity of the regulation was cognizable in federal court. *Id.,* 476 U.S. at 680, 106 S.Ct. at 2141. Further, the Court noted that "[r]espondents attack on the regulation here is not subject to ... a[n] [administrative exhaustion] requirement because there is no hearing, and thus no administrative remedy, to exhaust." *Id.,* 476 U.S. at 679, n. 8, 106 S.Ct. at 2140, n. 8.

Subsequent Second Circuit decisions have reinforced the efficacy of *Michigan Academy's* method/amount distinction. In *Kuritzky v. Blue Shield of W. New York, Inc.,* 850 F.2d 126, 128 (2d Cir.1988), *cert.*

*denied,* 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 778 (1989), the court rejected plaintiffs' argument that their claim was properly in federal court as a challenge to the *carrier's* methods in calculating benefits. The court explained that "method," as that term was used in *Michigan Academy,* "... does not mean the carrier's method of applying the regulation, which *Erika* held was unreviewable; rather it means the method set forth in the Secretary's regulatory scheme that prescribes how the carriers are to calculate benefits." *Id.* Likewise, in *Anderson v. Bowen,* 881 F.2d 1, 3 (2d Cir.1989), the court rejected claimants' attempt to characterize their claim as a challenge to the validity of certain Health Care Financing Administration instructions so as to fall within the "mandate" of *Michigan Academy.* Rather, the court found that because the instruction at issue was not binding on the carrier, claimants' challenges were to the carrier's amount determination. Accordingly, the court held that "[t]he district court has no jurisdiction under *Michigan Academy* or its progeny...." *Anderson,* 881 F.2d at 4. Additionally, the court in *Abbey v. Sullivan,* 788 F.Supp. 165, 168 (S.D.N.Y.1992), was so bold as to say, although clearly in dicta, that "[a]fter *Michigan Academy* it is clear that there is jurisdiction in the federal courts to hear statutory and constitutional challenges to the validity of rules and regulations promulgated under the Medicare Act, *regardless of whether there has been a final decision of the Secretary.*" (emphasis added). *See also McCuin v. Secretary of Health and Human Services,* 817 F.2d 161, 165–66 (1st Cir.1987) (federal question and mandamus jurisdiction appropriate where plaintiff-appellant challenged Secretary's procedure, even though she did not raise such challenge in an administrative proceeding).

Defendants cite *Anderson, supra,* for the proposition that "the proper focus of the jurisdictional inquiry in Medicare Part B disputes is not on the putative distinction

---

**3.** Congress has since amended 42 U.S.C. § 1395ff(b)(1)(C) to provide for judicial review

of Part B amount determinations.

between amount and methodology challenges, but on the nature of the process of administrative and judicial review established by Congress for the resolution of those disputes." (Defendants' memo, at p. 14). However, I can find nothing in *Anderson* to support this position. The court unequivocally stated at the outset of its opinion that federal jurisdiction did not exist because claimants were challenging an amount determination. The court said: "Finding a challenge to the amount of Medicare Part B benefits awarded at the heart of the controversy, we agree with the district court that it has no jurisdiction under 28 U.S.C. § 1331 to review the Part B benefit determination." *Id.*, 881 F.2d at 2.[4]

Defendants also caution that it is "crucial" to "transcend the semantics of the amount/methodology distinction" because "all challenges to Part B benefit determinations can be recast as reviewable challenges to methodology." (Defendants' memo, at p. 11, n. 4, *quoting, Texas Medical Ass'n v. Sullivan*, 875 F.2d 1160, 1165 (5th Cir.) *cert. denied*, 493 U.S. 1011, 110 S.Ct. 573, 107 L.Ed.2d 568 (1989)). However, *Texas Medical* does not, nor could it, reject the distinction established by *Michigan Academy* between amount and methodology. In fact, the court quotes *Kuritzky, supra*, to explain what "[t]he amount/methodology distinction really boils down to[,]" *Texas Medical*, 875 F.2d at 1166, and simply interprets *"Michigan Academy* and its progeny [to] require that we assess whether a [carrier] has the capacity to independently—free of binding regulations and determinations of the Secretary and subordinates—to hear and decide [plaintiffs'] complaints...." *Id.*

Defendants further argue that certain amendments to the Medicare Act enacted since *Michigan Academy* remove plaintiffs from the position in which the *Michigan Academy* respondents found themselves. (Defendant's memo, at p. 12). Under the statutory scheme applicable to the *Michi-*

*gan Academy* respondents, individuals dissatisfied with the determination as to the amount of benefits under Part A were entitled, under 42 U.S.C. § 1395ff(b)(1)(C), to a hearing by the Secretary as provided by 42 U.S.C. § 405(b) and judicial review of that determination as provided by 42 U.S.C. § 405(g). In contrast, individuals dissatisfied with the determination as to the amount of benefits under Part B were afforded carrier review under 42 U.S.C. § 1395u(b)(3)(C) and no judicial review at all. *See Erika*, 456 U.S. at 208, 102 S.Ct. at 1654 (Congress deliberately intended to foreclose review of the determinations of the amount of Part B awards beyond the "fair hearing by the carrier"). However, effective October 27, 1986, Congress amended 42 U.S.C. § 1395ff(b)(1)(C) to make uniform the administrative remedies available to individuals dissatisfied with the determination as to the amount of benefits under both Parts A and B. Defendants therefore argue that plaintiffs here have administrative remedies which were not available to the *Michigan Academy* respondents, and that this puts plaintiffs in the same posture as respondents in *Heckler v. Ringer, supra.* (Defendants' memo, at p. 12). Respondents in *Ringer* challenged the Secretary's denial of certain Part A benefits. The Court held that respondents were required to exhaust their administrative remedies because their claims were "... inextricably intertwined with what we hold is in essence a claim for benefits and that § 1331 jurisdiction over all their claims is barred by § 405(h)." *Ringer*, 466 U.S. at 624, 104 S.Ct. at 2026.

However, the 1986 amendments to 42 U.S.C. § 1395ff(b) provided increased review procedures to individuals dissatisfied with determinations as to the *amount* of their Part B benefits, and did not touch upon challenges by individuals to the Secretary's regulations. Therefore, the 1986 amendments did not displace the reasoning in *Michigan Academy*, and courts have

---

**4.** Defendants further argue that *Anderson* "... suggests that the importance of whether a particular policy is binding in the administrative process depends on whether a party has no recourse to judicial review." (defendants' memo, at p. 15, n. 6). This reading of *Anderson* is, at best, tortured; at worst, it is totally unfounded.

explicitly acknowledged *Michigan Academy*'s continuing vitality. *See Abbey*, 788 F.Supp. at 168, n. 2 (rejecting the Secretary's argument that the 1986 amendments rendered *Michigan Academy* a "dead letter."); *Griffith v. Bowen*, 678 F.Supp. 942, 945 (D.Mass.1988) ("There is no conflict between the decision in *Michigan Academy* and . . . the 1986 Act.").

Thus, to determine whether this Court has jurisdiction over plaintiffs' claims, I must decide whether the claims are challenges to the amount of Part B determinations, or whether they challenge the method of the determinations. Applying *Michigan Academy* and its progeny, it is not difficult to conclude that plaintiffs' challenge is to method and not to amount. Plaintiffs challenge the regulation pursuant to which Blue Shield developed the fee schedules used to determine the amounts which participating plaintiffs will be paid and which nonparticipating plaintiffs may charge for radiologist services. This challenge falls squarely within the scope of challenges to which *Kuritzky* interpreted *Michigan Academy* to apply, namely, challenges to " . . . the method set forth in the Secretary's regulatory scheme that prescribes how the carriers are to calculate benefits." *Kuritzky*, 850 F.2d at 128. Further, the challenged regulation directed Blue Shield to establish " . . . a radiology fee schedule for each locality in its service area. . . ." Given this regulation, Blue Shield did not have " . . . the capacity to independently—free of binding regulations and determinations of the Secretary and subordinates—to hear and decide . . ." plaintiffs' complaints as to the validity of the regulation. *Texas Medical Ass'n*, 875 F.2d at 1166.

Accordingly, I find that plaintiffs' claims set forth in plaintiffs' First, Third and Fifth Causes of Action are properly characterized as challenges to the Secretary's regulations, cognizable in this Court pursuant to 28 U.S.C. § 1331, and are not challenges to the amount of a Part B determination subject to the requirement that plaintiffs exhaust the administrative procedure set forth in 42 U.S.C. § 405.

■ Defendants' motion to dismiss plaintiffs' Fourth Cause of Action for lack of subject matter jurisdiction also must be denied. Plaintiffs unequivocally couch the Fourth Cause of Action as an amount challenge. Therefore, it is subject to exhaustion requirements. However, plaintiffs have alleged that exhaustion would be futile. The futility or not of the administrative remedies is a question of fact, inappropriate for resolution on a motion to dismiss. Therefore, defendants' motion as to the Fourth Cause of Action is denied.

■ However, defendants' motion to dismiss for lack of subject matter jurisdiction as to plaintiffs' Second Cause of Action must be granted. Plaintiffs' Second Cause of Action is predicated on mandamus jurisdiction, 28 U.S.C. § 1361. The writ of mandamus is an extraordinary remedy which should only be used in exceptional circumstances. *Kerr v. United States Dist. Court for the N. Dist. of California*, 426 U.S. 394, 402–03, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725 (1976). Mandamus jurisdiction is inappropriate where the applicant has not demonstrated "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the defendant's part to do the act in question; and (3) lack of another available, adequate remedy." *Anderson v. Bowen*, 881 F.2d at 5.

■ Because I have found that federal question jurisdiction is available to plaintiffs in this case, they have not demonstrated the third element. Therefore, without deciding whether "mandamus jurisdiction theoretically can be invoked to permit judicial review of [a] Part B determination[,]" *Id.*, I find that it would not be appropriate in this case.

Accordingly, defendants' motion to dismiss plaintiffs' First, Third, Fourth and Fifth Causes of Action for lack of subject matter jurisdiction is denied. Defendants' motion to dismiss plaintiffs' Second Cause of Action for lack of subject matter jurisdiction is granted.

II. *Retroactivity of the OBRA '90 Amendment to 42 U.S.C. § 1395m(b)*

Defendants' move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for

failure of plaintiff to state a claim upon which relief can be granted following Congress's retroactive amendment of 42 U.S.C. § 1395m(b), which explicitly authorized the establishment of radiology fee schedules on a locality basis.[5]

Plaintiffs counter defendants' motion by arguing that the retroactive application of the amendment violates the Fifth Amendment by depriving them of their property without due process of law and constitutes a "taking" without just compensation. (plaintiffs' supp. memo, at p. 6).

■ The defendants cannot prevail on this motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–03, 2 L.Ed.2d 80 (1957). In applying this standard, the allegations of the complaint must be accepted as true. *Square D Co. v. Niagara Frontier Tariff Bureau*, 476 U.S. 409, 411, 106 S.Ct. 1922, 1924, 90 L.Ed.2d 413 (1986). Simply stated, this requires me to assume that all the facts plaintiff asserts in the complaint are true and to decide, given those facts, whether it is legally possible for plaintiff to recover.

■ The analysis of the legal feasibility of plaintiffs' claim concerning the unconstitutionality of the retroactive application of the amendment must begin with the proposition that "... 'legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.'" *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601 (1984), (*quoting, Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976)). An amendment to the Medicare statute affecting the amount of payments to Medicare providers is a legislative act subject to this "arbitrary and irrational" test. *See St. Mary of Nazareth Hosp. Center v. Dep't of Health and Human Services*, 698 F.2d 1337, 1344 (7th Cir.1983) (quoting *Usery, supra* ). Accordingly, I reject plaintiffs' argument that the amendment in this case is subject to some heightened degree of scrutiny. (*See* Plaintiffs' supp. memo, at p. 8).

■ In *St. Mary of Nazareth, supra,* Medicare providers challenged the constitutionality of a retroactive amendment to the Medicare statute which stated that certain costs incurred by the providers relative to the care of indigent patients[6] were not allowable as "reasonable costs" under the Medicare statute. In determining whether the retroactive application of the amendment was constitutional, the court balanced three factors: (1) the nature of the asserted right that is altered by the legislation; (2) the nature and strength of the public interest served by the legislation; and (3) the extent to which the legislation impairs the asserted interest. *Id.*, 698 F.2d at 1345. Applying this analysis, I find that the retroactive application of the amendment herein passes constitutional muster.

### a. *The Nature of the Asserted Right*

The parties do not dispute that plaintiffs had a right to be paid for performing radiologist services. Plaintiffs argue that the pre-amendment version of 42 U.S.C. § 1395m(b) imparted upon them a vested right to be paid pursuant to fee schedules developed "on a regional, statewide or carrier service area basis," and that the amendment impinged on that right. (Plaintiffs' supp. memo, at p. 11). Defendants argue that although plaintiffs may have had vested rights to some compensation for their services, they had no statutory right

---

5. Plaintiffs' originally argued that the Secretary exceeded his statutory authority in promulgating 42 C.F.R. § 405.531. This argument was invalidated by Congress's action concerning 42 U.S.C. § 1395m(b).

6. The hospitals incurred these costs because they had received grants from the federal government under the Hill–Burton Act and had agreed that in partial repayment of such grants they would provide a certain amount of medical care to indigent patients. *St. Mary of Nazareth,* 698 F.2d at 1339.

to be paid for their services at a particular rate. Rather, defendants argue that plaintiffs were entitled to "... the rate set forth by the Secretary under his statutory authority, and set forth in regulations." (Defendants' reply, at p. 11).

Even if I accept plaintiffs' argument that the statute mandated that the Secretary promulgate a regulation authorizing development of radiologist fee schedules based on a regional, statewide or carrier service area *only*,[7] it is a different thing to say that plaintiffs had a vested right to such payment. In *Germantown Hosp. and Medical Center v. Heckler*, 590 F.Supp. 24, 31 (E.D.Pa.1983), *aff'd*, 738 F.2d 631 (3d Cir.1984), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985), the court said:

> Retroactive adjustments in the Medicare reimbursement system have been declared constitutional because included in the concept of statutory entitlement to reimbursement is the possibility that the statute or implementing regulations may be changed. *Springdale Convalescent Center v. Mathews*, 545 F.2d 943, 955–57 (5th Cir.1977). In addition, courts have recognized that "the expectations of those who enter a regulated field are diluted by the knowledge that occasional changes will be made to better carry out regulatory purposes." *Adams Nursing Home of Williamstown, Inc. v. Mathews*, 548 F.2d 1077, 1081 (1st Cir.1977) (citing *Federal Housing Administration v. Darlington, Inc.*, 358 U.S. 84, 79 S.Ct. 141, 3 L.Ed.2d 132 (1958)).

The nature of plaintiffs' statutory expectations is illustrated by the language of the "Participating Physician or Supplier Agreement" into which the participating plaintiffs entered. (Affidavit of Robert J. Lane, Jr., sworn to on January 11, 1991, Exhibit A). Under the Agreement, the participating plaintiffs agreed to accept direct Part B payment from the Medicare program, and that "... the approved charge, determined

by the Medicare carrier, shall be the full charge for the service covered by Part B." The participating plaintiffs therefore had no reasonable expectation to be paid on any more precise a basis.

b. *The Nature and Strength of the Public Interest*

"Not every law that upsets expectations is invalid; courts have generally compared the public interest in the retroactive rule with the private interests that are overturned by it." *Adams Nursing Home*, 548 F.2d at 1080. In *Adams Nursing Home*, the Secretary had issued regulations allowing Medicare providers to treat the depreciation of capital assets used to serve Medicare patients as a cost of providing care. Providers were left to their own devices as to the method they used for calculating depreciation, and from 1967 through 1970, plaintiff/appellee ("Adams") used an "accelerated" rather than a "straight line" method. In 1970, the Secretary issued a regulation restricting the future use of accelerated depreciation, and also issued a regulation designed to recapture the difference between accelerated and straight line depreciation from providers who were leaving the program.[8] *Id.*, 548 F.2d at 1087.

The court, weighing Adams's expectations against the public interest involved, found that the recapture provisions were constitutional. *Id.*, 548 F.2d at 1082. It found that the public's interest in recovering Medicare funds paid to providers who accelerated their depreciation costs and then left the program outweighed Adams's expectation that the depreciation rules would remain constant. Noting that "the government here is entitled to the benefit of any constitutional doubts we have," the court upheld the regulation. *Id.*, 548 at 1082.

In this case, plaintiffs knew that they would be paid for rendering radiologist services at a rate to be determined by the

---

7. The Secretary disputes that 42 C.F.R. § 405.-531 was in excess of his original statutory authority under 42 U.S.C. § 1395m(b)(2), and argues that a locality-based fee schedule was contemplated by the statute.

8. Plaintiff/appellee left the program in 1972.

Secretary's regulations. Further, they expected that the regulations would direct the development of fee schedules on a regional, statewide or carrier service area basis. They became aware in March 1989 that the Secretary issued regulations contrary to their expectations, effective for all radiologist services rendered after April 1, 1989. (Am.Complaint, ¶ 18). At that point, plaintiffs knew that the government was offering them less for their services than they had anticipated.[9] By the retroactive application of OBRA '90's amendment to 42 U.S.C. § 1395m(b), the government attempted to ratify the action of the Secretary. (Defendants' reply memo, at 7).

I must weigh the public's interest against plaintiffs' expectation that they would receive more for their services. Defendants assert that "... there is a strong public interest in having *Congress* resolve potential disputes concerning the meaning of congressional acts and insure the proper interpretation of those acts through retroactive clarifications." (Defendants' reply memo, at 8). Although I do not think Congress's amendment to 42 U.S.C. § 1395m(b) was a mere clarification, the amendment's legislative history does reflect a Congressional desire to ratify the Secretary's actions with regard to the fee schedules. The House Conference Report to the legislation states: "[w]hen the radiology fee schedule was established, the fee schedule was to be established on the basis of carrier service areas. This has been used by the Secretary to mean carrier localities." H.Conf.Rep. No. 964, 101st Cong., 2d Sess. 720 (1990), U.S. Code Cong. & Admin. News 1990, pp. 2017, 2425. Given the deference courts must pay to "legislative Acts adjusting the burdens and benefits of economic life," I cannot say that a Congressional desire to avoid the confusion that may result from differing interpretations of its actions is irrational. Accordingly, even if I find the interests of the plaintiffs and the public in this case are equally

balanced, the presumption in favor of constitutionality must carry the day.

### c. *The Extent to which the Amendment Impairs the Asserted Interest*

As I have discussed above, even if plaintiffs' interest is characterized as a right to be paid for radiologist services on a regional, statewide or carrier service basis, the amendment does not completely destroy that right. Plaintiffs will still be compensated for their services, only the rate will be calculated on a locality basis, which plaintiffs claim will compensate them at a lower rate. This leaves plaintiffs in a position similar to that of plaintiff/appellee Adams in *Adams Nursing Home, supra.* Adams was not denied depreciation allowances altogether, but simply retroactively denied a method by which the allowances were greater. Similarly, plaintiffs are not to be denied payment for their services, although they may receive less than they expected.

Therefore, based on the discussion above, I find that the retroactive application of OBRA '90's amendment to 42 U.S.C. § 1395m(b) is constitutional. Accordingly, defendants' motion to dismiss for failure to state a claim is granted.

### III. *Plaintiffs' Motion for a Stay*

Plaintiffs also have argued that, in the event that I find there to be insufficient evidence as to the definitions of "locality" and "carrier service area," I should deny defendants' motion to dismiss, or in the alternative, stay determination of defendants' motion pending the completion of discovery as to the issue. Plaintiffs correctly argue that I must resolve all issues of fact against defendants. (Affidavit of Robert J. Lane, Jr., sworn to on January 11, 1991, ¶ 8). However, as my discussion above makes clear, I have done so and still find in defendants' favor. Accordingly, plaintiffs' motion for a stay is denied.

---

**9.** The Participating Physicians Agreement attached as Exhibit A to Mr. Lane's January 11, 1991 affidavit gives the participating plaintiffs the opportunity to terminate their participation in the program effective December 31 of the calendar year in which they are participating. I find it interesting that, dashed expectations and all, the participating plaintiffs apparently have not elected to terminate.

## CONCLUSION

For the reasons articulated above, defendants' motion to dismiss plaintiffs' First, Third and Fifth Causes of Action for lack of subject matter jurisdiction is denied because those causes of action are cognizable under 28 U.S.C. § 1331. Defendants' motion to dismiss plaintiffs' Fourth Cause of Action on the same grounds is denied because a factual question exists as to the futility of administrative remedies. Defendants' motion to dismiss plaintiffs' Second Cause of Action is denied because mandamus jurisdiction is inappropriate in this case.

Further, because I find that Congress did not act arbitrarily or irrationally in making the amendment to 42 U.S.C. § 1395m(b) retroactive, such retroactive application is constitutional, and defendants' motion to dismiss this action for failure to state a claim is granted.

Finally, plaintiffs' motion for a stay of proceedings is denied.

## ORDER

IT HEREBY IS ORDERED, that defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) is denied in part and granted in part.

FURTHER, that defendants' motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6) is granted.

FURTHER, that plaintiffs motion for a stay of proceedings is denied.

FURTHER, that the Clerk of the Court is directed to enter judgment dismissing this action in accordance with this Decision and Order.

SO ORDERED.