**ABBOTT RADIOLOGY ASSOCIATES; Javaid Asgher, M.D., P.C.; Bailey Radiology, P.C.; Batavia Radiology Group, P.C.; Buffalo General X–Ray Associates; Clarence Sheridan Radiology Group, P.C.; Diagnostic Imaging Associates; Elmwood Radiologists, P.C.; Saleh A. Fetouh, M.D., P.C.; Saleh A. Fetouh, M.D. d/b/a Breast Screening Center of W.N.Y.; A. Paul Greiner, M.D., P.C.; Harlem Radiology, P.C. N/K/A Windsong Radiology, P.C.; Lancaster Radiology, P.C.; Meadowlands Imaging Group, P.C.; Millard Fillmore Hosp. Radiologists, P.C.; Philip C. Moudy, M.D.; Niagara Radiologists, P.C .; North Tonawanda X–Ray Center, P.C.; Nuclear Medicine Associates; Olean Radiology Associates, P.C.; Alvin M. Panahon, M.D.; Radiologic Physicians of W.N.Y., P.C.; C. Riggio, M.D.; Charles J. Riggio, M.D.; Riggio & Tetwesky, M.D.s, P.C.; Sisters Diagnostic Imaging Associates; Southtowns Radiological Group, P.C.; Gowanda Radiologists; Lakeshore Radiologists; Hamburg Radiologists; Tremont Radiological Group; and Ultrasound Associates, Plaintiffs,**

v.

**Donna E. SHALALA, as Secretary of the Department of Health and Human Services, and The Department of Health and Human Services, Defendants.**

No. 94–CV–390H.

United States District Court,
W.D. New York.

Nov. 20, 1997.

See also, 1995 WL 853042.

Robert J. Lane, Jr., Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY, for Plaintiffs.

Stephan J. Baczynski, U.S. Attorney's Office, Buffalo, NY, for Defendants.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct any and all further proceedings in this case, including the entry of final judgment, in accordance with 28 U.S.C. § 636(c). Pending for decision are plaintiffs' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Item 22) and defendants' cross-motion for summary judgement (Item 27).

### *FACTUAL BACKGROUND*

Plaintiffs are individual physicians and groups of physicians who specialize in radiology, and practice in the Western New York area. They are all "participating physicians" under the Medicare program. As participating physicians, they have agreed to accept payment on an assignment-related basis for services provided to their Medicare patients. 42 U.S.C. § 1395u(h)(1).

Plaintiffs receive reimbursement for their radiologist services under the Medicare Part B program, which pays for nonhospital medical services including physician services. Medicare Part B is administered nationwide by a network of private insurance carriers under contract with the Health Care Financing Administration (HCFA), a division of the Department of Health and Human Services (HHS). 42 U.S.C. § 1395u(a); *see Anderson v. Bowen*, 881 F.2d 1, 2 (2d Cir.1989). The private carrier acts as the Secretary's agent in the review and payment of Part B claims. 42 U.S.C. § 1395u.

Blue Shield is the carrier designated by the Secretary to administer the Medicare program for all of New York State outside of the greater New York metropolitan area. The program is administered on the basis of four geographic localities, with Western New York designated as Locality 1.[1]

On May 23, 1994, plaintiffs commenced this action against Donna Shalala, as Secretary of the Department of Health and Human Ser-

vices (the Secretary), and the Department of Health and Human Services (HHS), alleging that the Secretary improperly applied the "doctrine of comparability" to Medicare reimbursement rates for their radiologist services in Locality 1 and that as a result, the reimbursements they receive are less than that to which they are entitled under the Act.

The doctrine of comparability may be applied in the calculation of Medicare reimbursements only where an insurance carrier administering the Part B program also offers a private insurance program. If it is determined that the carrier's private insurance program is "comparable" to Medicare, then the carrier may not allow a higher payment for a service provided to a Medicare patient than it would allow if a comparable service under comparable circumstances had been provided to a patient covered by its private insurance plan. 42 U.S.C. § 1395u(b)(3)(B); 42 C.F.R. § 405.508.

Of the four localities in which Blue Shield administers the Medicare program, it offers a private insurance program only in Locality 1. Thus, Locality 1 is the only service area in which a comparability limitation can be applied. Plaintiffs contend, however, that their reimbursement should not have been limited to the amounts allowed under Blue Shield's private insurance plan because the private plan is not comparable to Medicare.

Neither party specifically addresses the difference in reimbursement rates resulting from the application of comparability limitations. Nor is any concrete example presented in the voluminous administrative record. There is some indication of the differential, however, at Exhibit 24 (T. at 538–41).[2] In a Blue Cross memorandum addressing the establishment of radiology fee schedules for 1989, it was noted that the fee schedules for Western New York radiologist services were approximately 25 percent less than the same fees for the other three localities in Upstate New York (Id. at 540).

Plaintiffs have exhausted their administrative remedies. Beginning in September

---

1. Locality 1 encompasses Erie, Niagara, Orleans, Genesee, Wyoming, Allegany and Cattaraugus counties.

2. "T" refers to the transcript of the administrative proceedings relating to this case.

1989, plaintiffs submitted numerous requests for carrier review of their Medicare reimbursement rates. After receiving adverse carrier determinations and adverse carrier hearing determinations from Blue Shield, plaintiffs requested a hearing before a Health and Human Services Administrative Law Judge (ALJ) on the issues of whether reimbursements were calculated correctly for the period March 17, 1989 through March 30, 1990, and whether plaintiffs' claims for services rendered from October 1, 1985 through March 16, 1989 could be reopened.

At the administrative hearing, held on March 24 and 25, 1992, plaintiffs argued that the comparability provisions of 42 U.S.C. § 1395u(b)(3)(B) should not have been applied in Locality 1 because the policy that HCFA employs to determine whether a private plan is comparable to Medicare is not consistent with the laws and regulations. Plaintiffs also argued that the HCFA policy is an unpublished regulation and is not merely interpretive but changes the regulation itself. Finally, plaintiffs contended that HCFA and Blue Shield applied comparability arbitrarily and capriciously.

On June 25, 1992, ALJ Margaret Quinn determined that the "comparability limitations are permissible, both under law and regulations, that there [sic] application in this instance, and the policy of HCFA in general is neither contrary to the statute nor is it a substantive change of the statute which would require publication. Therefore, comparability, as a policy in Locality 1, is proper" for the period March 17, 1989 through March 30, 1990 (Item 22, Ex. H, p. 27). The ALJ also denied plaintiffs' request to reopen prior cases dating back to October 1, 1985 (*Id.*). On March 30, 1994, the Health and Human Services Appeals Council reviewed and upheld ALJ Quinn's determination as the final decision of the Secretary.

On October 3, 1996, plaintiffs moved for summary judgment with respect to each of the six causes of action presented in their second amended complaint. Defendants cross-moved for summary judgment on the same issues on December 16, 1996. Plaintiffs' claims can be summarized as follows:

1. The Secretary's determination to apply comparability limitations to Medicare reimbursements in Locality 1 is inconsistent with and in violation of the comparability statute and regulation.

2. The Secretary's application of comparability is unlawful and invalid in that the policy HCFA employs to determine whether comparability is appropriate is a substantive rule that was never promulgated as a formal regulation in accordance with the Administrative Procedure Act.

3. The Secretary's application of comparability is unlawful and invalid in that the policy HCFA employs to determine whether comparability is appropriate was never published in the Federal Register as an "interpretive" rule in accordance with 42 U.S.C. § 1395hh(c)(1).

4. ALJ Quinn's June 25, 1992 decision was arbitrary, capricious, an abuse of discretion, not in accordance with the law, and not supported by substantial evidence in that it contains certain findings of fact that are not supported by the evidence in the record.

5. The Secretary's application of comparability was arbitrary and capricious in that sometime after 1980, the Secretary and HCFA changed their interpretation of the comparability provisions of the Medicare statute and regulation.

6. The plaintiffs' requests for reopening were supported by good cause and the Secretary's denial of same was arbitrary and capricious, an abuse of discretion, not in accordance with the law, and not supported by substantial evidence.

Plaintiffs are seeking judgment declaring the application of comparability in Locality 1 to be unlawful and invalid, and compelling the Secretary to recalculate Medicare payments for their services.

In addition to the present action, plaintiffs are concurrently prosecuting multiple administrative appeals before the Department of Health and Human Services concerning ra-

diologist services rendered subsequent to March 30, 1990. The parties have agreed that any such administrative proceedings or appeals filed or decided during the pendency of this action shall be governed by the outcome of this action, as if they had been added to this action in a timely manner (Item 22, Ex. C).

### STANDARD OF REVIEW

The Medicare Act provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ...." 42 U.S.C. 405(g) (incorporated through 42 U.S.C. § 1395ii). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion...." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938), *quoted in Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991). Under this standard, judicial review of the Secretary's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson, supra,* 402 U.S. at 401. The court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982). The Commissioner's determination cannot be upheld, however, when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Grey v. Heckler,* 721 F.2d 41, 44 (2d Cir.1983); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979).

Thus, judicial review of the Commissioner's determination involves two levels of inquiry. First, the court must decide whether the correct legal principles were applied in making the determination. *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987); *Baybrook v. Chater,* 940 F.Supp. 668, 672 (D.Vt. 1996). Second, if correct legal principles

were applied, the court must decide if the ALJ's decision is supported by substantial evidence. *Johnson, supra,* 917 F.2d at 985.

In the present case, "the HHS Appeals Council denied plaintiffs' challenge to the method by which reimbursement rates for radiologist services are calculated" (Item 22, ¶ 2). While this court is compelled to accept the Secretary's supported findings of fact, plaintiffs' claims present questions of law involving the Secretary's construction of the governing statute and regulation, and her interpretation of the law. Judicial review of such claims is *de novo. Hughes v. Chater,* 895 F.Supp. 985, 993 (N.D.Ill.1995); *Rivera v. Sullivan,* 771 F.Supp. 1339, 1351 (S.D.N.Y. 1991).

Specifically, this court has jurisdiction to review the validity of regulations and policies related to Medicare Part B payment methodology pursuant to the grant of general federal-question jurisdiction found in 28 U.S.C. § 1331.[3] *See Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 673–678, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986); *Abbott Radiology Associates v. Sullivan,* 801 F.Supp. 1012, 1015–18 (W.D.N.Y.1992); *Abbey v. Sullivan,* 788 F.Supp. 165, 168 (S.D.N.Y.1992); *Kuritzky v. Blue Shield of Western New York, Inc.,* 850 F.2d 126, 128 (2d Cir.1988).

The standard for reviewing the Secretary's interpretation of a statute or regulation under her purview was established in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In *Chevron,* the Supreme Court determined that where Congress has spoken directly to the issue presented, the court must give effect to Congress' intent as expressed in the language and legislative history of the statute. If, however, the statute is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's

---

**3.** While plaintiffs have not asserted 28 U.S.C § 1331 as a basis for jurisdiction, this court recognizes its applicability in this case. Plaintiff's failure to assert this jurisdictional ground is somewhat curious in light of the fact that while plaintiffs were engaged in their administrative hearing on the issues presented here, they were concurrently challenging the validity of another of the Secretary's regulations affecting the calculation of their reimbursement for radiologist services under § 1331.

answer is based on a permissible construction of the statute." *Id.* at 843.

In assessing the reasonableness of the Secretary's interpretation, the court need not find that it is the only acceptable interpretation or the one the court would have given if the issue had been presented directly to it in the first instance. *Id.* at n. 11; *Connecticut Dep't of Income Maintenance v. Heckler,* 471 U.S. 524, 532, 105 S.Ct. 2210, 85 L.Ed.2d 577 (1985). Thus, the Secretary is entitled to deference so long as the interpretation is reasonable, *Cosgrove v. Sullivan,* 999 F.2d 630, 632–33 (2d Cir.1993), and the deference to be given is such that the Secretary's interpretation should not be overturned "unless there are compelling indications that it is wrong." *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 384, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *Weeks v. Quinlan,* 838 F.2d 41, 43 (2d Cir.1988).

Though both sides posit the comparability limitation as a simple concept which deceptively appears to be quite complex, this court echoes the observation of Justice Blackmun in *Lukhard v. Reed,* 481 U.S. 368, 107 S.Ct. 1807, 95 L.Ed.2d 328 (1987) (Blackmun, J., concurring): "In a statutory area as complicated as this one, the administrative authorities are far more able than this Court to determine congressional intent in the light of experience in the field." *Id.* at 383 (case involving the definition of income under the AFDC program); *see also, St. Mary's Hospital of Troy v. Blue Cross and Blue Shield Ass'n,* 788 F.2d 888, 890 (2d Cir.1986) (quoting *Marina Mercy Hospital v. Harris,* 633 F.2d 1301, 1304 (9th Cir.1980)) (the Secretary has broad discretion "[p]articularly in a program as complex and ripe with potential for abuse as Medicare").

Plaintiffs assert on a number of grounds, however, that the Secretary's interpretation of the comparability statute fails to satisfy even this highly deferential standard.

## THE STATUTORY AND REGULATORY FRAMEWORK

The only statutory reference to Medicare's comparability limitation is found at 42 U.S.C. § 1395u(b) which states, in pertinent part, that:

> (3) Each such contract [between Medicare and a private carrier] shall provide that the carrier—
>
>> (A) will take such action as may be necessary to assure that, where payment under this part for a service is on a cost basis, the cost is reasonable cost ...;
>>
>> (B) will take such action as may be necessary to assure that, where payment under this part for a service is on a charge basis, such charge will be reasonable and not higher than the charge applicable, for a comparable service and under comparable circumstances, to the policyholders and subscribers of the carrier,
>
> . . . .

From its inception, Medicare has paid charges that are "reasonable" for the particular service involved, less any copayment. 42 U.S.C. § 1395l(a)(1). Effective January 1, 1971, Medicare reimbursement rates were determined using a "reasonable charge" formula. 42 C.F.R. § 405.504(a)(2) (1977). Applying this methodology, a physician treating a Medicare patient would be paid the lower of: (1) the physician's actual charge for the service, (2) the physician's customary charge,[4] or (3) the current prevailing charge[5] in the locality for that service. However, under 42 U.S.C. § 1395u(b)(3)(B), reimbursements can be made at an amount lower than Medicare's "reasonable charge" rate where "comparability" applies.

Procedures for determining reasonable charges are set forth in the regulations at 42 C.F.R., part 405, subpart E, §§ 405.500 *et*

---

4. The "customary charge" is the amount an individual physician charges in the majority of cases for a particular service. If the physician varies his or her charges for that service so that no single amount is charged in the majority of cases, the midpoint of the various charges will generally be considered the "customary charge." 42 C.F.R. § 405.503.

5. The current "prevailing charge" is based on a statistical analysis of customary charges for similar services in the locality. The prevailing charge is an amount that covers 75 percent of those customary charges. 42 C.F.R. § 405.504.

*seq.* (1991), titled "Criteria for Determination of Reasonable Charges...." The regulation explaining how comparability is to be applied in making that determination states, in pertinent part:

(a) *Application of limitation.* The carrier may not in any case make a determination of reasonable charge which would be higher than the charge upon which it would base payment to its own policyholders for a comparable service in comparable circumstances. The charge upon which it would base payment, however, does not necessarily mean the amount the carrier would be obligated to pay. Under certain circumstances, some carriers pay amounts on behalf of individuals who are their policyholders which are below the customary charges of physicians or other persons to other individuals. Payment under the supplementary medical program would not be limited to these lower amounts.

(b) *When comparability exists.* "Comparable circumstances," as used in the Act and this subpart, refers to the circumstances under which services are rendered to individuals and the nature of the carrier's health insurance programs and the method it uses to determine the amounts of payments under these programs. Generally, comparability would exist where: (1) The carrier bases payment under its program on the customary charges, as presently constituted, of physicians or other persons and on current prevailing charges in a locality, and (2) The determination does not preclude recognition of factors such as speciality status and unusual circumstances which affect the amount charged for a service.

42 C.F.R. § 405.508 (1991). Thus, in an effort to contain costs, the Secretary limits payment for services to Medicare patients to the amount its designated carrier pays on behalf of its private policyholders under "comparable circumstances."

Medicare reimbursements for radiology services were calculated using the "reasonable charge methodology" from 1971 until 1989. In Locality 1, however, reimburse-ment rates were lower than Medicare's "reasonable charge" rate because of the determination that comparability limitations applied.

In 1989, Medicare's payment methodology was revised, and carriers were directed to establish a reimbursement fee schedule for radiology services for each locality.[6] Initially, the fee schedules were computed using a locality-specific conversion factor that was based on Medicare charges previously allowed in that locality. Because radiologists in Locality 1 had been receiving a lower reimbursement rate than radiologists in Localities 2, 3 and 4, Locality 1's reimbursement rates under the new fee schedules remained lower than the other localities as well. In other words, the comparability limitation was built into Locality 1's fee schedule. This disparity has remained. For calendar years after 1989, the fee schedules have been updated based on the Medicare economic index. 42 C.F.R. § 405.532(a) (1991).

In determining that comparability limitations apply in Locality 1, the following HCFA policy was employed:

[W]hen the reimbursement levels of a carrier's private business insurance plan are accepted as full payment by at least half of the physicians or suppliers in a practice area, those reimbursement levels *must* be used as comparability limitations on Medicare payment determinations.

(T. at 586, Ex. 36). The main issue raised in the complaint is whether the Secretary's interpretation of 42 U.S.C. § 1395u(b)(3) and 42 C.F.R. § 405.508, as reflected in this policy, is contrary to the clear mandates of the statute and regulation, or is otherwise invalid.

### PLAINTIFF'S CLAIMS

I. **VALIDITY OF THE SECRETARY'S INTERPRETATION AND APPLICATION.**

A. *The Secretary's Interpretation.*

1. **The Statute—42 U.S.C. § 1395u(b)(3).**

First, plaintiffs maintain that the comparability statute itself mandates a com-

---

**6.** For services furnished on or after April 1, 1989, the amount paid under Medicare Part B for radiologist services is 80 percent of the lesser of—the actual charge, or the amount provided under the radiology fee schedule. 42 C.F.R. § 405.530(b) (1991).

parison of the "charge" allowed under Medicare with the "charge" upon which the carrier would base payment under its private plan. Plaintiffs contend that the term "on a charge basis" refers to Medicare's reasonable charge methodology, and that a private plan can be considered comparable to Medicare only where it calculates reimbursement based upon physicians' actual charges.[7]

In response, the Secretary maintains that plaintiffs have misconstrued the term "on a charge basis." According to the Secretary, this term does not refer to a particular payment methodology, but is used merely to distinguish between those services that are reimbursed on a reasonable cost basis, as referred to in subsection (3)(A) of the statute, and those that are reimbursed on a reasonable charge basis, as referred to in subsection (3)(B). In general, reasonable cost basis providers are institutions, and certain types of health maintenance organizations and heath clinics, with reasonable charge basis providers being all other providers of medical services.[8] The Secretary maintains that any provider classified as a reasonable charge basis provider under 42 C.F.R. § 405.501 (1991) may be subject to comparability limitations.

I find that the Secretary's interpretation of the phrase "on a charge basis" is a reasonable one that is entitled to deference. Plain-

tiffs derive their interpretation by focusing solely on the language of subpart B of 42 U.S.C. § 1395u(b)(3). Upon considering the statute in its entirety, however, it is clear that a distinction is drawn between cost basis providers and charge basis providers.

In addition, there is a more fundamental reason for rejecting plaintiffs' argument. The portion of the statute on which plaintiffs rely states that the carrier:

> (B) will take such action as may be necessary to assure that, where payment ... is on a charge basis, such charge will be reasonable and not higher than the charge applicable, for a *comparable* service and under *comparable* circumstances....

42 U.S.C. § 1395u(b)(3)(B) [emphasis added]. The statute unambiguously provides that the carrier is required to compare the services rendered and the circumstances under which those services are provided. It is only where the services and circumstances of the private plan are *comparable* to those under Medicare that the carrier must assure that Medicare's reasonable charge does not exceed the charge the carrier will allow under its private plan. The carrier is required to evaluate and adjust the Medicare "charge," if necessary, *after* the comparability determination has been made.

---

**7.** It is undisputed that Blue Shield does not employ the reasonable charge methodology in calculating reimbursement rates used in its private plan. In fact, the hearing testimony revealed that Blue Shield does not apply any specific formula in establishing its rates, and that it takes numerous factors, in addition to physicians' charges, into account (T. at 303–304).

**8.** § 405.801 Determination of reasonable charges.

(a) Except as specified in paragraphs (b) and (c) of this section, Medicare pays no more for Part B medical and other health services than the "reasonable charge" for such service. The reasonable charge is determined by the carriers (subject to any deductible and coinsurance amounts as specified in §§ 410.152 and 410.160 of this chapter).

(b) Part B of Medicare pays on the basis of "reasonable cost" ... for certain institutional services, certain services furnished under arrangements with institutions, and services furnished by entities that elect to be paid on a cost basis (including health maintenance orga-

nizations, rural health clinics, and end-stage renal disease facilities).

(c) For services furnished on or after April 1, 1989, payment under Medicare Part B for radiologist services is governed by radiology fee schedules that are determined in accordance with the provisions of §§ 405.530 through 405.533

(d) Carriers will determine the reasonable charge on the basis of the criteria specified in § 405.502, and the customary and prevailing charge screens in effect when the service was furnished. (Also see §§ 405.480 through 405.482 and §§ 405.550 through 405.557, which pertain to the determination of reimbursement for services performed by hospital-based physicians.) However, when services are furnished more than 12 months before the beginning of the fee screen year (January 1 through December 30) in which a request for payment is made, payment is based on the customary and prevailing charge screens in effect for the fee screen year that ends immediately preceding the fee screen year in which the claim or request for payment is made.

Upon a plain reading of the statute, there is no language mandating a comparison of "charges" as precedent to finding that comparability limitations apply. Nor is there any requirement that, for comparability to apply, the private plan must collect physicians' billing data and then calculate payments based upon that information.

Accordingly, I find the Secretary's position to be consistent with Congress' intent as expressed directly in the language of the statute.

### 2. The Regulation—42 C.F.R. § 405.508.

■ Plaintiffs claim that the Secretary's own regulation requires that the private plan must base payment on the collection of physicians' "customary charge" data, calculated in a manner substantially similar to Medicare's reasonable charge methodology. 42 C.F.R. § 405.508(b) states, in pertinent part:

(b) **When comparability exists.** "Comparable circumstances"... refers to the circumstances under which services are rendered to individuals and the nature of the carrier's health insurance programs and *the method it used to determine the amounts of payments under these programs.* Generally, comparability would exist where:

(1) The carrier bases payment under its program on the customary charges, as presently constituted, of physicians or other persons and on current prevailing charges in a locality, . . . .

[emphasis added]. Under the regulation then, a determination of comparability is based on three factors: the circumstances under which services are rendered, the nature of the plan, and the payment methodology.

Plaintiffs maintain that when the regulation refers to the "method" used to determine payments, it is referring to the reasonable charge methodology or one that is substantially similar. Plaintiffs rely on the dictionary definition of "comparable" as "equivalent or similar" to support their contention that the calculation of customary charge data is the only reimbursement method that can be found "comparable" to Medicare's.

In contrast, the Secretary asserts that the statute and regulations allow for flexibility in determining whether comparable circumstances exist. According to the Secretary, therefore, a private plan's payment methodology does not have to be derived from the same data or calculated in the same manner as Medicare's.

While § 405.508 does provide some guidance with respect to the payment methodology factor, it states *generally,* not exclusively, where comparability may exist. In applying the preface "generally," the regulation implies two alternatives: (1) while comparability does exist where the carrier bases payment on customary charges, it may also exist where other payment methodologies are used, or (2) comparability generally exists where this particular payment methodology is used, but that is not always the case. Either alternative provides a reasonable interpretation of the regulation given that a determination of comparable circumstances does not rest solely on the payment methodology, but on an unspecified combination of up to three factors.

Furthermore, the regulation itself is drafted in broad language that does not specify the criteria by which each of the three factors is to be evaluated, the weight to be accorded to each, or the use of any particular formula. The regulation does not specify whether all of the factors are necessary to a finding of comparability or whether meeting all the factors will always constitute comparability. This expansive language alone suggests that some flexibility is inherent in the comparability determination. This view is also supported by related regulatory provisions. For example, § 405.502 provides in part that:

(a) Criteria. The law allows for flexibility in the determination of reasonable charges to accommodate reimbursement to the various ways in which health services are furnished and charged for.

. . . .

(c) Application of criteria. In making determinations, carriers apply the provisions of the law under broad principles issued by the Health Care Financing Administration.

I also note that if, as plaintiffs argue, Congress intended that a finding of comparable circumstances be dependent upon the carrier basing its private program payments on the same data or calculation method used by Medicare, the obvious route would have been to include such criteria in the statute itself. In fact, it is difficult to see how a carrier, employing Medicare's own methodology, could ever arrive at a reimbursement rate lower than Medicare's reasonable charge that could then be used as a limitation on Medicare payments. Plaintiffs' interpretation of the regulation would, in effect, render the comparability statute superfluous.[9] *See Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.*, 968 F.2d 286, 293 (2d Cir.1992) (It is a "well-established principle that each word of a statute is to be given meaning and not rendered superfluous.").

Finally, in the Medicare Carriers Manual, the definition assigned to "customary charges" as that term is used in 42 C.F.R. § 405.508(b)(1) is not synonymous with Medicare's reasonable charge methodology.

> The "current" customary and/or prevailing charges of a carrier's private health plan, ... refer to the payment screens *that are presently in effect*, i.e., payment levels actually being used in the carrier's private business for settling claims submitted by its policy holders or subscribers.

Medicare Carriers Manual, § 5026, p. 5–20.15. This definition refers solely to the payment *levels* used in the carrier's private plan, without any reference to the methodology by which they are derived.

In sum, I find that the regulations do not preclude a finding of comparability where a private insurance company uses a rate-setting method that is not calculated on the basis of customary charge data. Accordingly, the Secretary's determination to that effect is a reasonable interpretation of the

statute and regulations which must be upheld.

### 3. The HCFA Policy.

■ In a letter dated October 12, 1989, HCFA responded to plaintiffs' objections to the application of comparability limitations in Locality 1. The letter states, in pertinent part:

> HCFA has examined this issue a number of times. It is the agency's policy that when the reimbursement levels of a carrier's private business insurance plan are accepted as full payment by at least half the physicians or suppliers in a practice area, those reimbursement levels *must* be used as comparability limitations on Medicare payment determinations.

(T. at 586, Ex. 36).[10] An HCFA memorandum written in response to a similar inquiry stated that where the above conditions are met, comparability should be applied *regardless of how the private plan's reimbursement amounts are determined* (T. at 378, Ex. 10). Blue Shield applied comparability limitations to Medicare reimbursements in Locality 1 based on this standard, and HCFA approved the application of comparability each year (T. at 563, Ex. 31; and 523, Ex. 22).

Plaintiffs contend that this policy is in direct contravention to the Secretary's regulation because it treats payment methodology as entirely irrelevant to the comparability determination. They maintain that this is an invalid policy that should not have been used to limit their reimbursement amounts.

In response, the Secretary asserts that HCFA made the reasonable determination that of the three factors referred to in 42 C.F.R. § 405.508(b), the most important is the "nature of the carrier's health insurance programs." Specifically, the Secretary determined that where a private plan calls for payment in full, exclusive of deductibles and co-insurance, as Medicare does, comparabili-

---

9. Plaintiffs claim that the amount calculated under the private plan can, in fact, vary from Medicare's reasonable charge limitation because the private plan's pool of doctors may vary somewhat from Medicare's. The very slight variations in charges suggested by this explanation makes plaintiffs' interpretation suspect.

10. While this language, referred to in plaintiffs, brief, comes from a letter written in 1989, the Secretary acknowledges that this reflects an interpretation of the statute and regulations that was employed during the entire time period encompassed by plaintiffs' claims (Item 30, p 19).

ty limitations should be applied. The Secretary maintains that this policy meets the statute's intent that Medicare enjoy the advantage of a carrier determination that a particular payment level for a specific service is reasonable.

As stated above, the Secretary's position that comparability may exist where the private carrier does not base reimbursement on the calculation of Customary charge data is a permissible one that is entitled to deference. In applying this interpretation, the Secretary has also determined that where a private policy seeks to effectuate full payment for covered services, the method the carrier uses to determine reimbursement amounts need not be substantially similar to the reasonable charge methodology. In other words, where differing methodologies result in a comparable payment outcome—that is, payment in full—the method used to achieve that outcome need not be examined.

I find that this policy is in keeping with the flexibility and broad principles for making reasonable charge determinations provided in the statute and regulation. Specifically, the policy is in keeping with the statute's focus on the services and circumstances of the respective plans. Furthermore, as already noted, the regulation does not provide any particular formula for determining comparability, nor does it specify whether all factors are necessary to such a finding. Accordingly, the HCFA policy reflects a permissible construction of the statute and regulation that is entitled to deference.

### 4. Limiting Circumstances.

Finally, plaintiffs argue that the HCFA policy is contrary to the Secretary's regula-

tion at 42 C.F.R. § 405.508(a), which states that:

> (a) *Application of limitation.* The carrier may not in any case make a determination of reasonable charge which would be higher than the charge upon which it would base payment to its own policyholders for a comparable service in comparable circumstances. *The charge upon which it would base payment, however, does not necessarily mean the amount the carrier would be obligated to pay. Under certain circumstances, some carriers pay amounts on behalf of individuals who are their policyholders which are below the customary charges of physicians or other persons to other individuals. Payment under the supplementary medical program would not be limited to these lower amounts.*

[emphasis added]. Once more, plaintiffs argue that this provision limits the application of comparability to those instances where a carrier bases payment under its private plan on physicians, customary charge data.[11]

According to the Secretary, there is a more plausible interpretation. The Secretary maintains that the emphasized language, when read in context, is referring to those situations where the carrier establishes a charge on which it bases payment, but the carrier is not obligated to pay the full amount of that charge. This situation could occur, for example, where the private insurance contract carries a copayment. The physician may agree to accept the amount allowed by the carrier as full payment, but only a portion is paid by the carrier with the remainder to be paid by the patient.[12]

---

**11.** Plaintiffs claim that this interpretation has been confirmed by the Department of Health and Human Services in a memorandum (T. at 506, Ex. 18). I do not find this to be the case. The memorandum cited was written in response to similar claims raised by anesthesiologists. It does initially state that the regulations indicate there should be no comparability limitation where the carrier pays amounts below the customary charges of physicians. However, it goes on to conclude that comparable circumstances can exist where factors other than charge data are used to determine reimbursement rates. Specifically, the Secretary concluded that where a Part B carrier has a comparable private plan that seeks to achieve full payment for covered

services, as opposed to partial indemnity payment, the payment set under the private plan should be used to limit Medicare reimbursement.

**12.** The Secretary provides the following example. Assume that the charge established by the carrier is $75, but the private contract calls for the carrier to pay only 80 percent of that amount, with the patient being responsible for a 20 percent copayment. According to the Secretary, the charge under Medicare would be limited to the $75 the carrier allows for the service, not the $60 it is obligated to pay under its contract with the physicians.

Again, the Secretary has presented a reasonable interpretation that is not contrary to the statute or regulations. The "certain circumstances" referred to in 42 C.F.R. § 405.508(a) are not defined or explained in any provision of the reasonable charge regulations. If plaintiff's interpretation is accepted, however, it is unlikely that comparability could ever be applied. Physicians' customary charges act as a ceiling on the amount that Medicare will reimburse. To say that comparability cannot be applied where a carrier pays an amount under its private plan which is below the customary charge, means, in effect, that comparability could never be applied.

In sum, plaintiffs have advanced an interpretation of the statute and regulations that is not clearly supported by the plain language of the statute or any other evidence of legislative intent. Further, although plaintiffs have put forth numerous arguments challenging the Secretary's interpretation, none present compelling indications that the Secretary's interpretation is wrong. Their presentation of an alternative interpretation, no matter how reasonable it also may be, is insufficient to overcome the deference accorded the Secretary.

Accordingly, I find that the Secretary's interpretation of the comparability statute, as reflected in the HCFA policy at issue, is a permissible interpretation of the statute and regulations that is entitled to deference.

### B. *Application of Comparability in Locality 1.*

■ In their fifth claim, plaintiffs argue that the Secretary arbitrarily and capriciously changed the agency's interpretation of the comparability statute, and that the application of comparability in Locality 1 is therefore invalid. In essence, plaintiffs assert that HCFA changed its comparability policy from one that would not have allowed the application of the comparability limitation in Locality 1 to one that does.

Whether an agency's action is arbitrary and capricious is governed by the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). In deciding whether a particular action violates the APA, the court may not substitute its own judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Rather, the court must determine whether the agency's action " 'was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (quoting *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)).

With respect to statutory interpretations, an agency must have ample latitude to adapt its rules and policies to changing circumstances. *Rust v. Sullivan,* 500 U.S. 173, 187, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) (citations omitted). The agency should be given substantial deference where there is good reason for the agency's decision to change its interpretation. *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 355–56, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989) (holding that the agency's changed interpretation, which "came after the prior regulation had been subjected to considerable criticism," was entitled to substantial deference).

As plaintiffs themselves point out, in 1979, the General Accounting Office (GAO) issued a report criticizing HCFA's failure to provide guidance for making comparability determinations (T. at 383 & 386, Ex. 11). It stated that the current regulations are "not clear about whether all of the regulation's criteria are necessary for showing comparability, and whether meeting all these criteria always constitutes comparability" and that as a result, the provision was being inconsistently administered by HCFA (T. at 406–07). The GAO recommended that Congress should consider deleting the comparability language from the law or should clarify it (T. at 383 & 387). Congress, however, did not take any subsequent action with respect to the recommendation.

The Secretary admits that there was confusion regarding the application of comparability during the 1970s and claims that HCFA progressively clarified the issue in the

Medicare Carriers Manual at § 5026(B)(2) (defining "customary charges" as used in 42 C.F.R. § 405.508(b)), its Part B Intermediary Letter No. 77–26 (stating that full payment private plans, as opposed to partial indemnity plans, are comparable to Medicare), and the current comparability policy (stating that full payment private plans are comparable regardless of the methodology used). This court notes that prior to implementation of the current policy,[13] the GAO's question as to whether all three factors listed in 42 C.F.R. § 405.508(b) were necessary to a finding of comparability remained unanswered.

Given the confusion that previously existed with respect to this issue, the GAO's criticisms, and Congress' inaction, I find that HCFA was sufficiently justified in changing its policy as a means of clarifying the questions raised.

█ In addition to their objections to HCFA's policy changes, plaintiffs also allege that the current policy has been applied arbitrarily. They base this assertion on the fact that comparability limitations are applied by only four carrier's nationwide,[14] and claim that this fact alone is facial evidence of inconsistent application. It cannot, however, be inferred from this fact alone that there are other carriers that have private reimbursements plans that are accepted as full payment by more than half the physicians in their service area, that those private plans reimburse at rates less than Medicare's, and that HCFA has chosen not to apply comparability limitations where those circumstances exist.

The ALJ made no finding with respect to this allegation. That was certainly proper where this bare allegation is unsupported by any evidentiary data in the record.

█ While the previous questions raised issues of law, there remains the factual ques-

tion of whether HCFA properly applied its policy in Locality 1.

According to the provider agreement which physicians 'sign' to participate in Blue Shield's private insurance programs, "[p]ayment under any such contracts by Blue Shield shall constitute payment in full for the service rendered and the Participating Doctor agrees that he will make no charge to persons covered under any of such contracts in addition to the amount of such payment" (T. at 494, Ex. 12). In addition, the uncontradicted testimony at the administrative hearing was that, since the 1970s, nearly 100 percent of the radiologists practicing in Locality 1 have participated in Blue Shield's private plan, that is, they have accepted the reimbursement allowed under Blue Shield's private plan as payment in full for their services (T. at 310).

Accordingly, I find that the Secretary's determination that HCFA's comparability policy is not contrary to the law and that it was properly applied in Locality 1 is a permissible conclusion that is entitled to deference. Furthermore, there is no dispute as to whether the criteria set forth in the HCFA policy has been met in Locality 1 for the time period at issue. Therefore, plaintiffs' motion for summary judgment with respect to their first and fifth causes of action is denied and the Secretary's cross-motion is granted.

## II. VALIDITY OF THE SECRETARY'S RULE MAKING.

### A. Administrative Procedure Act Rule Making Provisions.

█ Plaintiffs assert in their second claim that the Secretary violated the notice and comment rule making provisions of the Administrative Procedure Act (APA) and the Medicare statute by failing to promulgate the HCFA comparability policy by regulation. 5 U.S.C. § 553;[15] 42 U.S.C. § 1395hh.[16] They

---

**13.** The current comparability policy has been in effect since at least 1984 (Item 23, p. 33).

**14.** In response to plaintiffs' inquiry of February 27, 1992, HCFA confirmed that for the years 1989 through 1991, comparability was applied by a total of four carriers affecting reimbursement rates in the entire states of Pennsylvania,

Michigan, and Maryland, as well as the Western District of New York (T. at 659–61).

**15.** § 553. Rule making
(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law.

claim that the comparability policy changes or establishes a substantive legal standard governing payment for their services and that the policy is therefore subject to the rule making requirements cited.

The APA recognizes two distinct types of rules—legislative rules and interpretive rules. Legislative rules "create new law, rights, or duties, in what amounts to a legislative act." *Clarry v. United States,* 85 F.3d 1041, 1048 (2d Cir.1996) (quoting *White v. Shalala,* 7 F.3d 296, 303 (2d Cir.1993)). Interpretive rules, in contrast, merely "clarify an existing statute or regulation." *Id.* Because they do not create or destroy any substantive rights, interpretive rules are exempt from the APA's notice and comment procedures. 5 U.S.C. § 553(b)(3)(A); *New York City Employees' Retirement Sys. v. SEC,* 45 F.3d 7, 12 (2d Cir.1995).

Plaintiffs maintain that in the absence of the HCFA policy, they would have been paid in accordance with the reasonable charge methodology or fee schedules based on the reasonable charge methodology. In other words, they claim that under the statute and regulations alone, their payments would not have been limited to the amount paid for comparable services under Blue Shield's private plan. Plaintiffs conclude, therefore, that the HCFA policy is a legislative rule that has a direct effect on their rights to payment for services to Medicare patients. I disagree.

Where the carrier offers a private plan, as in the present case, the statute does not give providers an unequivocal right to receive the "reasonable charge" established by Medicare for their services because of the possibility that comparability limitations may apply. In spite of plaintiffs' numerous arguments to the contrary, there is simply no indication, based on the broad and somewhat ambiguous regulatory language, that providers are *guaranteed* payment in accordance with

Medicare's reasonable charge methodology wherever the private carrier does not use a substantially similar reimbursement method.

The Secretary's regulation governing comparability provides that the "comparable circumstances" mentioned in the statute *refers* to three factors, including the method the carrier uses to determine the amounts of payments under its private programs. As already discussed, the regulation does not state that the carrier must use the reasonable charge methodology or base calculations on particular data for comparable circumstances to exist. Nor does the regulation provide any specific formula or any criteria indicating how each factor is to be evaluated.

In short, there is no support for plaintiffs' conclusory assertion that but for the HCFA policy, comparability limitations could not have been applied in Locality 1. Accordingly, I find that the policy did not change any clearly established laws, rights or duties.

The term "comparable circumstances" was not defined by Congress. Given the varied interpretations advanced by the parties here, it is clear that the Secretary's own definition of that term as provided in 42 C.F.R. § 405.508 is uncertain. The HCFA policy provides one set of circumstances under which comparability limitations will be applied. Though the policy can at best be viewed as a partial clarification, I find that it explains, rather than changes, the legal standard governing the payment for services set forth in the regulation.

Accordingly, plaintiffs' motion for summary judgment on the ground that the Secretary violated the APA's notice and comment rule making provisions is denied. The government's cross-motion is granted.

## B. Publication of Interpretive Rules.

█ In their third claim, plaintiffs assert that, should the court determine that the

---

. . . .

Except when notice or hearing is required by statute, this subsection does not apply—
 **(A)** to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice; . . . . .

**16.** § 1395hh. Regulations

**(a)(2)** No rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits under this subchapter shall take effect unless it is promulgated by the Secretary by regulation under paragraph (1).

HCFA policy is an interpretive rather than a legislative rule, the policy is invalid because the Secretary failed to publish it in the Federal Register as required by 42 U.S.C. § 1395hh(c)(1).[17]

The HCFA policy at issue was articulated in HCFA's Part B Intermediary Letter No. 77–26, dated June 1977, which states in pertinent part as follows:

> The Part B payment mechanism, which incorporates the reasonable charge criteria and the comparability provision, seeks to achieve parity between the Medicare program's payments for covered medical and other health services and those made by private insurers under their own health plans for similar services provided to their policyholders and subscribers. Thus, where a Medicare carrier has a comparable private health plan, which seeks to achieve full payment (exclusive of any deductible or coinsurance) of charges for covered services received by policyholders, as opposed to only partial indemnity payment, the payment levels under that plan, if lower than the Medicare reasonable charge screens, should set the limit on the amounts allowed for covered services rendered to Medicare beneficiaries.

(Item 28, Ex. D). This interpretive rule or guideline clearly predated the enactment of 42 U.S.C. § 1395hh(c)(1) by more than a decade. Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, 101 Stat. 1330–78 (1987) (enacted December 22, 1987). Section 1395hh(c)(1) does not apply retroactively.[18] Therefore, the Secretary's alleged failure to publish the HCFA policy does not render the policy invalid.

The parties disagree as to whether Part B Intermediary Letter No. 77–66 was, in fact, ever published in the Federal Register. Given my finding that publication was not required, however, their dispute is not material to a decision on the pending motion. Accordingly, plaintiffs' motion for summary judgment is denied and the Secretary's cross-motion is granted.

### III. ALJ QUINN'S FINDINGS.

■ As their fourth claim, plaintiffs allege that ALJ Quinn's June 25, 1992 decision contains certain findings of fact that are not supported by any evidence in the record, and are in fact contrary to the evidence presented.

Primarily, plaintiffs take issue with the fact that, in reaching her determination that comparability exists in Locality 1, Judge Quinn found that Blue Shield's private plan is comparable to Medicare because it "takes into account" physician's customary charges in setting reimbursement rates. Plaintiffs claim that the evidence establishes conclusively that Blue Shield does not "take into account" customary charges, and that in any event, for comparability to exist, a private plan must "base its payments upon" customary charges.

ALJ Quinn discussed customary charges in reaching her determination that "the absence of comparability has not been established here" (T. at 117). The ALJ noted that while the method of determining payment under Blue Shield's private plan is not identical to Medicare's, "*nor is there a requirement that they should be,* prevailing charges and cost factors are elements taken into account for determining Blue Shield's private plan reimbursement rate" (T. at 117–118 (emphasis added)). After noting that nearly 100 per-

---

**17.** Section 1395hh(c)(1) provides that:
 **(c) Publication of certain rules; . . .**
 **(1)** The Secretary shall publish in the Federal Register, not less frequently than every 3 months, a list of all manual instructions, interpretive rules, statements of policy, and guidelines of general applicability which—
 **(A)** are promulgated to carry out this subchapter, but
 **(B)** are not published pursuant to subsection (a)(1) of this section and have not been previously published in a list under this subsection.

**18.** The Secretary cites Pub.L. No. 100–203, § 4035(a)(3) to support the assertion that the publication requirement applies prospectively only. Section 4035(a)(3) applies to amendments to 42 U.S.C. §§ 1395h and 1395u(c)(1), and not to the provision at issue here, 42 U.S.C. § 1395hh(c)(1). Upon review, however, I find that there is nothing in the language of § 1395hh(c)(1) or its legislative history indicating that retroactivity was intended.

cent of the radiologists in Locality 1 accept Blue Shield's private plan reimbursement as payment in full, ALJ Quinn stated that she was unable to find that comparability did not exist (T. at 118).

On review of the record, there is substantial evidence to conclude that Blue Shield does, in some manner, take customary charge data "into account." Mr. Gregory Brodnick, a Vice President at Blue Shield of Western New York, testified at the administrative hearing. He stated that although Blue Shield did not employ any specific formula in setting reimbursement rates, it looked at many factors, including what doctors were actually billing (T. at 303–304). He further stated that Blue Shield collects billing data on all doctors in Western New York, and not just those that participate in its private insurance plan (308). Brodnick went on to remark that "[we] need to take a look at all the billings," which he described as the physician's customary and usual charges (309). I find that this is substantial evidence on which the ALJ could base her statement.

Plaintiffs also claim that ALJ Quinn acknowledged in her decision that a private insurance plan must base payment on the UCR methodology to be considered "comparable" to Medicare.[19] However, upon reading the ALJ's decision in its entirety, it is clear that the sentence quoted by plaintiffs is simply a prelude to the ALJ's rejection of plaintiffs' argument that private plans must employ the UCR payment methodology before comparability can exist.

In the same paragraph, ALJ Quinn went on to state that:

If, for comparability to exist, the methodology of determining payment for the private sector plans had to be the same, or identical, this would have been reflected in the statute and/or the regulation, and is not (Social Security Act Section 1842(b)(3)(F) and 42 CFR 405.508(b)(1)).

(T. at 115). ALJ Quinn concluded further on in her decision, that even where physicians, charges were but one of numerous factors examined in setting reimbursement rates, the application of comparability in Locality 1 was not contrary to the applicable law. She reached this conclusion after acknowledging that Blue Shield does not employ any specific rate-setting formula, so that there is no way to ascertain to what degree physicians' charges are considered.

In any event, these were not "factual findings" made in the course of an evidentiary determination. Rather, they were part of the ALJ's reasoning in reaching her legal conclusion that "[t]he application of comparability limitations to payment and HCFA's interpretation of such policy is not against laws and regulations as established by Congress and the Secretary" (T. at 123). As has already been discussed above, I find that this conclusion is entitled to substantial deference.

Accordingly, plaintiffs' motion for summary judgment on their fourth cause of action is denied and the Secretary's cross-motion is granted.

## IV. REQUEST FOR REOPENING.

In their sixth cause of action, plaintiffs seek reopening of all claims related to their radiologist services rendered between October 1, 1985 and March 29, 1989. They claim that their request for reopening was supported by good cause and that the Secretary's denial was therefore arbitrary and capricious and not supported by substantial evidence.

As ALJ Quinn noted in her decision, carrier amount determinations for services rendered under Medicare Part B prior to January 1, 1987 are not subject to review. The opportunity for a hearing as provided in 42 U.S.C. § 405(b) with respect to such claims was first provided in the Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–509, 100 Stat. 1874, 2037 (1986) (codified at 42 U.S.C. 1395ff). The effective date provision governing the amendment of Medicare appeal rights specifically provides that "[t]he

---

**19.** Quoting ALJ Quinn's decision at page 20:
The statutory [definition of comparability indicates that in order for comparability to exist, the carrier must base payments on customary and prevailing charges in the community, but does not set a specific formula as there is in Medicare determinations.
(T. at 115).

amendments made by subsection (a) shall apply to items and services furnished on or after January 1, 1987." 101 Stat.2036, § 9341(b).

Accordingly, I find that ALJ Quinn's decision not to reopen cases from October 1, 1985 through December 31, 1986 is in accordance with the law.

As to claims for services rendered from January 1, 1987 through March 29, 1989, ALJ Quinn stated that because of her decision that the application of comparability limitations in Locality 1 was valid, there was no good cause to reopen the previous carrier determinations. The Secretary argues that the ALJ's decision on this matter is not subject to judicial review. Plaintiffs disagree.

The Social Security Act provides that "[a]ny individual, after any final decision of the Secretary made after a hearing ... may obtain a review of such decision by a civil action" within the time allowed by the Secretary. 42 U.S.C. § 405(g). In *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Supreme Court held that, in the absence of a constitutional claim, judicial review of a decision not to reopen is foreclosed. Because a request to reopen may be denied without a hearing, it is not "a final decision of the [Commissioner] made after a hearing" as provided in the Act. *Id.* at 107. *See also Latona v. Schweiker*, 707 F.2d 79, 81 (2d Cir.1983); *Grant v. Shalala*, No. 93–CV–0124E(F), 1995 WL 322589 (W.D.N.Y. March 13, 1995).

Plaintiffs, relying on *Oregon v. Bowen*, 854 F.2d 346 (9th Cir.1998), claim that federal courts do have jurisdiction to review such requests. In *Oregon*, the Ninth Circuit found that both the Provider Reimbursement Review Board and the federal courts have jurisdiction to review carrier determinations not to reopen Medicare Part A claims. Plaintiffs argue that the Court's reasoning is equally applicable to Medicare Part B claims and the issue of whether an ALJ has jurisdiction to review carrier determinations not to reopen. Though not specifically stated, I presume plaintiffs wish to extend this reasoning to judicial review of ALJ determinations as well.

There is no need to explore this premise further, as the Second Circuit has recently rejected the *Oregon* holding. *Good Samaritan Hosp. Regional Med. Ctr. v. Shalala*, 85 F.3d 1057 (1996); *see also, Binghamton Gen. Hosp. v. Shalala*, 856 F.Supp. 786 (S.D.N.Y. 1994).

In any event, good cause for reopening exists only where new and material evidence is furnished, a clerical error occurred in the computation of benefits, or a review of the evidence on which the determination was made shows on its face that an error was made. In light of all of the foregoing findings, it is clear that good cause does not exist for reopening plaintiffs' reimbursement determinations.

### *CONCLUSION*

For the foregoing reasons, plaintiffs' motion for summary judgment **(Item 22)** is DENIED, the Secretary's cross-motion for summary judgment **(Item 27)** is GRANTED, and the claim dismissed.

**SO ORDERED.**